Anerio V. Altman, Esq. #228445
Lake Forest Bankruptcy II, APC
26632 Towne Centre Drive
Foothill Ranch, CA 92610
Phone and Fax:  (949) 218-2002
avaesq@lakeforestbkoffice.com
**ATTORNEY FOR**
**DEBTOR-IN-POSSESSION**
**SUSAN JO WHITE**

# UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA –SANTA ANA DIVISION

In re:  SUSAN JO WHITE

Debtor-In-Possession

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

**Case No.:** 8:26-bk-11720-SC

**Chapter:** 11

**DEBTOR-IN-POSSESSION'S OPPOSITION TO THE MOTION OF CREDITOR HOLLIE LEMKIN TO DISMISS THE CASE; DECLARATION OF ANERIO V. ALTMAN, ESQ.**

**JUDGE:**
Hon. Scott Clarkson

**HEARING:**
Date:  August 5, 2026
Time:  1:30 P.M.
Place: 5C

///

TO THE HONORABLE SCOTT C. CLARKSON, THE UNITED STATES TRUSTEE, THE 20 LARGEST UNSECURED CREDITORS, CREDITOR LAW OFFICES OF HOLLIE A. LEMKIN, APC, AND ALL OTHER PARTIES IN INTEREST AND THEIR ATTORNEYS OF RECORD:

Debtor-In-Possession Susan Jo White ("Debtor") respectfully submits this opposition ("Opposition") to the Motion to Dismiss Chapter 11 Case for Bad Faith and to Impose a Two or More Year Refiling Bar ("Motion") filed by creditor Law Offices of Hollie A. Lemkin, APC ("Lemkin", "Creditor"). This Opposition will be based on this document, the attached Memorandum of Points and Authorities, Exhibits attached hereto, and any such testimony as may be adduced at the hearing.

Dated:  July 22, 2026                    Signed:/S/ ANERIO V. ALTMAN, ESQ.
                                         ANERIO V. ALTMAN, ESQ.
                                         ATTORNEY FOR DEBTOR
                                         SUSAN JO WHITE

## TABLE OF CONTENTS

| Section | Page |
| --- | --- |
| **MEMORANDUM OF POINTS AND AUTHORITIES** | 3 |
| **I. INTRODUCTION** | 3 |
| **II. STATEMENT OF FACTS** | 4 |
| A. Debtor Filed This Chapter 11 Case to Reorganize Under Court Supervision | 4 |
| B. The Prior Cases Were Dismissed Because Debtor Was Not Eligible for Chapter 7 Relief | 4 |
| C. The Address Used for Lemkin Was the Same Address Used in Three Prior Cases | 5 |
| D. Debtor's Counsel Reached Out After the 341(a) Hearing and Offered Curative Relief | 6 |
| E. The 341(a) Hearing Was Brief, and Debtor's Counsel Provided the Audio to Lemkin's Counsel | 7 |
| F. Lemkin Has Not Shown Irreparable Prejudice | 7 |
| **III. ARGUMENT** | 8 |
| A. Dismissal Under Section 1112(b) Requires Cause, and the Motion Does Not Establish Cause | 8 |

| | |
|---|---|
| B. The Use of a Historical Address Does Not Establish Intentional Concealment | 9 |
| C. Any Prejudice from the Missed 341(a) Appearance Can Be Cured Without Dismissal | 10 |
| D. Lemkin Has Retained Every Meaningful Opportunity to Protect Her Rights in This Case | 11 |
| E. Dismissal Must Be Evaluated From the Perspective of the Entire Creditor Body, Not Solely Lemkin's Individual Collection Interests | 12 |
| F. Prior Bankruptcy Filings Do Not Automatically Establish Bad Faith in This Chapter 11 Case | 13 |
| G. The Motion Prematurely Demands Confirmation-Stage Proof Before Debtor Has Had an Opportunity to Proceed Through the Chapter 11 Process | 15 |
| H. The Motion Does Not Establish That Conversion or Dismissal Is in the Best Interests of Creditors and the Estate | 16 |
| I. A Two-Year or Longer Refiling Bar Is an Extraordinary Remedy and Is Not Warranted | 17 |
| J. The State-Court Disputes Do Not Establish Cause to Dismiss This Chapter 11 Case | 18 |

| | |
|---|---:|
| **IV. CONCLUSION** | 19 |
| **DECLARATION OF ANERIO V. ALTMAN, ESQ.** | 20 |
| **EXHIBIT A** | 23 |
| **EXHIBIT B** | 28 |
| **EXHIBIT C** | 38 |
| **EXHIBIT D** | 40 |
| **EXHIBIT E** | 42 |

## TABLE OF AUTHORITIES

**Cases**

| Authority | Page(s) |
|---|---:|
| *Duran v. Gudino (In re Duran)*, 630 B.R. 797, 807–10 (B.A.P. 9th Cir. 2021) | 17 |
| *Leavitt, In re*, 171 F.3d 1219, 1224–25 (9th Cir. 1999) | 13 |
| *St. Paul Self Storage Ltd. Partnership, In re*, 185 B.R. 580, 582–83 (B.A.P. 9th Cir. 1995) | 8 |
| *Sullivan v. Harnisch (In re Sullivan)*, 522 B.R. 604, 613 (B.A.P. 9th Cir. 2014) | 8, 16 |

**Statutes**

| Authority | Page(s) |
|---|---:|
| 11 U.S.C. § 341(a) | 3–12, 17, 19 |
| 11 U.S.C. § 349(a) | 17 |
| 11 U.S.C. § 1112(b) | 8, 15, 16, 18 |

**Rules**

| Authority | Page(s) |
|---|---:|

| Federal Rule of Bankruptcy Procedure 2004 | 4, 7–12, 18–19 |
|---|---|

TABLE OF CONTENTS AND AUTHORITIES

## MEMORANDUM OF POINTS AND AUTHORITIES

### I. INTRODUCTION

The Motion asks the Court to impose the severe remedies of dismissal and a two-or-more-year filing injunction based principally on an asserted notice issue and Debtor's prior bankruptcy history. The record before the court does not support that relief.

The alleged notice defect was not an effort to conceal this case from Lemkin. Debtor's counsel used the same address for Lemkin that had been used or seen used in three prior cases. See the Declaration of Anerio V. Altman, Esq, Exhibit A thereto. That historical address was not invented for this case and was not selected to deprive Lemkin of notice. When counsel did not see Lemkin's counsel at the meeting of creditors, as Ms. Lemkin's counsel admits, Debtor's counsel reached out after the 341(a) hearing, raised the potential notice issue, offered to update the address, and offered to pay for Lemkin to attend her own Rule 2004 examination so that Lemkin would not be prejudiced by any missed opportunity to ask questions. Id. Counsel also provided the audio of the 341(a) hearing to Lemkin's counsel on Friday, July 17, 2026. Id.

Those facts are inconsistent with the Motion's accusation that Debtor and her counsel deliberately attempted to exclude Lemkin from the case. At most, the record shows that an address previously used in related proceedings should now be updated. That issue is curable. It does not establish bad faith, does not warrant dismissal of a Chapter 11 case at the outset, and certainly does not justify a two-year refiling bar.

The Motion also improperly treats prior Chapter 7 dismissals as conclusive proof that this Chapter 11 case must fail. Based on the history of this Debtor, the opposite is true. Debtor's prior cases were dismissed because they were filed under Chapter 7 when parties alleged, successfully, that Debtor was not eligible for Chapter 7 relief pursuant to the prior Courts, the United States Trustee and the Creditor. The Court, and those parties, repeatedly indicated that Debtor should have proceeded under Chapter 11 instead. Id, Exhibit B. This case is therefore not another attempt to pursue the same relief previously rejected; it is Debtor's effort to proceed under the chapter the Court previously identified as the appropriate chapter. Debtor has invoked Chapter 11 to address

her creditors in an orderly process, under Court supervision, and with all parties—including Lemkin—able to seek discovery, object to any plan, and test feasibility. The appropriate course is to allow the case to proceed under that supervision, not to terminate the case before the Chapter 11 process can operate.

For these reasons, the Motion should be denied. Alternatively, if the Court believes additional protections are necessary, Debtor requests that the Court impose targeted curative relief—such as requiring an amended matrix, renewed notice, a continued or reconvened meeting of creditors, and/or expedited Rule 2004 discovery—rather than dismissal or a refiling bar.

## II. STATEMENT OF FACTS

### A.  Debtor Filed This Chapter 11 Case to Reorganize Under Court Supervision

Debtor filed this Chapter 11 case to address her debts through a supervised bankruptcy process. The Motion emphasizes that Debtor previously filed Chapter 7 cases, but that history does not establish that the present Chapter 11 case was filed in bad faith. Chapter 11 provides a different structure, different creditor protections, different disclosure obligations, and a plan-confirmation process that allows creditors to object if Debtor cannot satisfy the Code's requirements.

The Motion asks the Court to decide now—before the development of the Chapter 11 record—that Debtor cannot reorganize. That request is premature. Lemkin and the United States Trustee retain all rights to examine Debtor, seek documents, object to any plan or disclosure statement, move for appointment of a trustee or examiner if warranted, or seek dismissal later if actual Chapter 11 cause develops.

### B. The Prior Cases Were Dismissed Because Debtor Was Not Eligible for Chapter 7 Relief

The Motion relies on Debtor's prior bankruptcy cases, but it omits the critical point: those cases were dismissed because Debtor filed under Chapter 7 when parties asserted, successfully, that she was not eligible for Chapter 7 relief. Exhibit B, *supra.*  The prior dismissals were not

determinations that Debtor could never seek bankruptcy relief. Rather, the Court repeatedly found that Debtor should have filed under Chapter 11 instead.

That distinction matters. Debtor is now proceeding under Chapter 11, the chapter the Courts previously identified as the appropriate vehicle. The present filing therefore does not repeat the Chapter 7 eligibility problem that led to the prior dismissals. It responds to that problem by placing Debtor in the chapter where creditors can receive disclosure, participate in plan negotiations, object to any proposed treatment, and test feasibility through the confirmation process.

**C. The Address Used for Lemkin Was the Same Address Used in Three Prior Cases**

The Motion characterizes the Lemkin address on the creditor matrix as "phony," "deliberate," and "manipulation of notice." That characterization is not supported by the facts. The address was the same address that had been used or seen used for Lemkin in three prior cases. Exhibit A, *supra.* Debtor and her counsel did not create a new address in this case to hide the filing. They carried forward an address associated with Lemkin from prior related bankruptcy matters.

Following the filing of the bankruptcy case, Debtor's Counsel provided the Notice of Bankruptcy Filing to the Debtor who in turn informed Debtor's Counsel that it was provided to her employer.  The reason that this was provided to the employer in this matter was that Ms. White was suffering under two garnishments at the time of filing and Debtor wanted those garnishments to cease.  This notice in turn would be provided by the employer to the civil authorities enforcing the garnishment, who then would provide the same to the Creditor.  This is Debtor's Counsel's firm's *modus operandi* in most bankruptcy cases with similar facts.  In the firm's experience, it is done this way because the civil authorities tend to react more quickly and tend to be sometimes more reliable in ceasing collections when notice is provided by the employer in this manner.

Nevertheless, the garnishment did not cease, and Debtor thought this was due to the Debtor's employer; The Debtor's employer is not U.S. based and had difficulty processing the Notice of Bankruptcy Filing and initially refused to do so. For this reason, Debtor believed the issue for the garnishment ceasing was due to her employer, not a lack of notice to Ms. Lemkin.

That may have resulted in an address that should be updated, but it is not evidence of bad faith. Bankruptcy schedules and matrices are frequently amended when counsel learns that a creditor prefers a different address or that an address previously associated with a creditor is no longer current. The appropriate remedy is amendment and additional notice, not dismissal.

In fact, the Court's own noticing record undermines the Motion's characterization of the Corporate Plaza address as a knowingly "phony" or facially ineffective address. The Bankruptcy Noticing Center certificate filed at ECF No. 12 reflects that notice was mailed to Lemkin at Law Office of Hollie A. Lemkin, Law Office of John Teal, 23 Corporate Plaza Drive Suite 150, Newport Beach, CA 92660 (the "23 Corporate Plaza Drive address"). As a matter of procedure, returned or undeliverable BNC notices are ordinarily reflected in the same BNC notice when reported back through the noticing process. Here, the BNC notice at ECF No. 12 does not identify that the 23 Corporate Plaza Drive address was returned or undeliverable. Thus, whatever may ultimately have occurred with the notice after delivery to that address, the objective record available to Debtor and her counsel did not indicate that the address was invalid or that mail sent there could not be delivered. This further distinguishes an address that may have become outdated as a preferred notice address from the Motion's accusation that Debtor knowingly used a fictitious or deliberately ineffective address.

**D. Debtor's Counsel Reached Out After the 341(a) Hearing and Offered Curative Relief**

Debtor's counsel did not ignore the issue. After the 341(a) hearing, counsel reached out to Lemkin's counsel when counsel realized there may have been a notice issue. See the Altman Declaration, *supra.* Counsel offered to update Lemkin's address. Counsel also offered to pay for

Lemkin to attend her own Rule 2004 examination of Debtor so that Lemkin could obtain the examination opportunity she claims to have lost. Id.

That offer directly undercuts the Motion's theory. A party attempting to keep a creditor away from the case would not voluntarily identify the issue, offer to correct the address, and offer to fund a creditor's own Rule 2004 examination. Those steps demonstrate good faith, transparency, and an effort to eliminate any potential prejudice.

**E. The 341(a) Hearing Was Brief, and Debtor's Counsel Provided the Audio to Lemkin's Counsel**

The meeting of creditors lasted only approximately fifteen minutes. It could not have lasted materially longer that day because both United States Trustee attorney Kenneth Miskin and Debtor's counsel had to attend another hearing together at 1:30 p.m. that same day. Id. Thus, even if Lemkin's counsel had attended live, the most Lemkin's counsel could have done was listen for approximately fifteen minutes while the United States Trustee's attorney asked questions.

Debtor's counsel also provided the audio from the 341(a) hearing to Lemkin's counsel on Friday, July 17, 2026. Id. Lemkin therefore had access to what occurred at the meeting shortly after the issue was raised and before the hearing on the Motion. This further reduces any claim of prejudice.

**F. Lemkin Has Not Shown Irreparable Prejudice**

Lemkin's asserted prejudice is curable and, in practical terms, minimal. Lemkin has appeared, filed the Motion, and is actively participating in the case. The 341(a) hearing lasted only approximately fifteen minutes, and because of the 1:30 p.m. hearing that United States Trustee attorney Kenneth Miskin and Debtor's counsel both had to attend, Lemkin's counsel would not have had an extended opportunity to examine Debtor even if counsel had attended live. At most, Lemkin's counsel would have listened to the United States Trustee's attorney ask questions.

In any event, Debtor's counsel provided the audio of the 341(a) hearing to Lemkin's counsel on July 17, 2026. If Lemkin believes additional inquiry is warranted, the meeting can be continued or reconvened, and Lemkin can pursue Rule 2004 discovery. Debtor's counsel has also offered reimbursement for the reporter cost of Lemkin attending her own Rule 2004 examination.

The Bankruptcy Code provides remedies for notice issues. It does not require dismissal of an entire Chapter 11 case where the creditor has actual notice, has received the hearing audio, can participate, and can be made whole through targeted procedures.

### III.

### ARGUMENT

**A. Dismissal Under Section 1112(b) Requires Cause, and the Motion Does Not Establish Cause**

Section 1112(b) permits dismissal or conversion only upon a showing of "cause." Although bad faith may constitute cause in an appropriate case, the inquiry is fact-intensive and focuses on the totality of circumstances. The question is not whether a creditor is frustrated by the filing, but whether the debtor is abusing the bankruptcy process rather than attempting to reorganize. See In re St. Paul Self Storage Ltd. Partnership, 185 B.R. 580, 582-83 (B.A.P. 9th Cir. 1995); Sullivan v. Harnisch (In re Sullivan), 522 B.R. 604 (B.A.P. 9th Cir. 2014). Bad faith is not established by isolated imperfections where the issue is curable and the debtor is proceeding under court supervision.

The Motion does not meet that standard. It relies heavily on rhetoric concerning the address used for Lemkin, and recitation of actions that occurred in State Court, but the evidence shows that the address was drawn from prior cases and was not fabricated for this case. The Motion also disregards and denigrates counsel's prompt curative efforts after the 341(a) hearing, including the offer to update the address and pay for Lemkin to attend a Rule 2004 examination.

A curable notice issue is not the same as a bad-faith filing. The Court can address any notice concern through less drastic remedies, including:

    1. requiring Debtor to file and serve an amended creditor matrix;

2. directing service of all prior case notices on Lemkin at any updated address Lemkin designates;

3. continuing or reconvening the meeting of creditors if the United States Trustee believes that is appropriate;

4. authorizing expedited Rule 2004 discovery; and

5. adjusting deadlines if any party demonstrates that lack of notice affected a substantive right.

Those remedies would address the actual issue. Dismissal would instead give Lemkin the ultimate relief it seeks in its collection dispute without allowing the Chapter 11 process to proceed.

**B. The Use of a Historical Address Does Not Establish Intentional Concealment**

The Motion asks the Court to infer that Debtor and counsel intentionally selected an address "least likely" to provide notice. That inference is unwarranted because there is a simpler explanation: the same address had been used or seen used in three prior cases. Exhibit A, *supra.* The use of a historical address may warrant amendment when better information becomes available, but it does not show concealment.

Nor does the absence of Lemkin's counsel from the 341(a) hearing prove bad faith. Counsel's reaction to that absence is important. Debtor's counsel reached out after the hearing, identified the potential issue, offered to correct the address, and offered a procedure to ensure Lemkin could examine Debtor through Rule 2004. Those facts are inconsistent with an intent to exclude Lemkin.

The Motion's contrary theory requires the Court to assume that Debtor's counsel both intentionally concealed the case from Lemkin and then voluntarily exposed that alleged concealment while offering to fund additional discovery. The more reasonable inference is that counsel used an address carried forward from prior cases and, when he suspected a notice issue, attempted to cure it.

**C. Any Prejudice from the Missed 341(a) Appearance Can Be Cured Without Dismissal**

Lemkin argues that it lost the opportunity to examine Debtor at the initial meeting of creditors. Even if the Court credits that concern, the remedy is not dismissal. The 341(a) process and Rule 2004 are designed to permit examination of the debtor's financial affairs. If additional examination is warranted, the Court can allow it.

The alleged lost opportunity was limited in any event. The 341(a) hearing lasted only approximately fifteen minutes and could not have lasted materially longer that day because United States Trustee attorney Kenneth Miskin and Debtor's counsel both had to attend another hearing together at 1:30 p.m. Thus, Lemkin's counsel's live participation would have been limited, at most, to listening while the United States Trustee's attorney asked questions.

Debtor's counsel then provided the audio from the 341(a) hearing to Lemkin's counsel on Friday, July 17, 2026. Debtor's counsel has also offered to pay for Lemkin to attend her own Rule 2004 examination of Debtor.

Debtor is not suggesting that Lemkin's opportunity to participate in the meeting of creditors was unimportant or that Debtor may determine on Lemkin's behalf whether she should have attended. The relevant question, however, is whether the missed opportunity caused prejudice that cannot now be cured without dismissal of the entire Chapter 11 case.

A meeting under section 341(a) provides creditors an opportunity to examine a debtor concerning the debtor's current financial condition, assets, liabilities, disclosures, and administration of the bankruptcy estate. It is not a forum for retrying the parties' longstanding state-court disputes or obtaining a substantive adjudication of the historical grievances recounted throughout the Motion.  Here, Lemkin already possesses extensive knowledge concerning Debtor as a result of years of litigation, prior bankruptcy proceedings, discovery, and judgment-enforcement activity. To the extent Lemkin seeks additional information concerning Debtor's current financial circumstances, that opportunity can be fully restored.

As stated, the initial meeting was brief, Debtor's counsel has provided Lemkin with the audio recording, and Debtor remains available for further examination. The facts do not support that there was a practical and irremediable prejudice as Lemkin alleges. Lemkin can review the audio, ask questions, request documents, and develop any record it believes supports later relief. What Lemkin should not be permitted to do is convert a curable notice dispute into immediate dismissal of the case.

The meeting may be reconvened if appropriate, and Lemkin may pursue additional examination and document production under Rule 2004. Debtor's counsel has further offered to personally bear the cost of a court reporter for such an examination. Accordingly, the missed appearance does not justify minimizing Lemkin's right to participate, but neither does it establish an irreparable deprivation requiring dismissal.

**D. Lemkin Has Retained Every Meaningful Opportunity to Protect Her Rights in This Case**

The practical effect of the notice issue must also be evaluated in light of the particular creditor asserting prejudice. Lemkin is not a creditor who first learned of Debtor or her financial circumstances after discovering this case. Lemkin and her counsel have a long-standing contentious state court litigation history and have participated extensively in multiple prior bankruptcy cases involving Debtor, conducted discovery concerning Debtor's financial affairs, participated in prior meetings of creditors and Rule 2004 proceedings, prosecuted adversary proceedings, litigated motions to dismiss, and pursued post-bankruptcy judgment enforcement. Indeed, the Motion itself demonstrates Lemkin's extensive familiarity with Debtor's financial and litigation history.

Against that background, Lemkin has not identified information uniquely available at the initial meeting of creditors that has now been permanently lost. She presently has actual notice, has appeared through counsel, has received the audio of the meeting, and retains the ability to examine Debtor concerning her current financial circumstances and obtain relevant documents. She likewise retains all substantive rights to scrutinize Debtor's disclosures, object to any

proposed plan or disclosure statement, vote where applicable, and seek appropriate relief if subsequent developments establish cause.

The relevant question is therefore not whether a procedural opportunity was missed—it was—but whether that missed opportunity inflicted prejudice proportionate to dismissal of the entire case. On this record, it did not. Every legitimate bankruptcy-related inquiry Lemkin could have pursued concerning Debtor's current financial affairs remains available to her.

**E. Dismissal Must Be Evaluated From the Perspective of the Entire Creditor Body, Not Solely Lemkin's Individual Collection Interests**

Chapter 11 is a collective proceeding, and Lemkin is not Debtor's only creditor. Debtor's schedules identify substantial obligations to other creditors, including claims significant in both amount and priority. Although Lemkin is unquestionably a major creditor entitled to vigorously protect her interests, the remedy under section 1112(b) cannot be determined solely by whether dismissal would permit Lemkin to resume her individual collection efforts.

The present bankruptcy stays the individual race to collection and subjects Debtor's financial affairs to a single supervised process in which all creditors may participate. Dismissal would terminate that collective process and return creditors to their separate nonbankruptcy remedies, potentially allowing those with the most immediate collection leverage to obtain payment ahead of others. Whether that result serves Lemkin's individual interests is a different question from whether dismissal serves the interests of the creditor body and the estate as a whole.

The Motion does not meaningfully address that distinction. It identifies reasons Lemkin would prefer dismissal and resumption of her collection remedies, but it does not establish that the other creditors would be better served by terminating the Chapter 11 process before Debtor has had an opportunity to propose treatment of their claims. Particularly at this early stage, the collective interests of creditors favor allowing the Chapter 11 process to proceed long enough for Debtor's proposed treatment to be disclosed and evaluated rather than allowing a single creditor's collection position to determine the fate of the case.

This distinction is particularly important where the alleged notice prejudice to Lemkin is itself fully remediable. Dismissing a collective Chapter 11 proceeding affecting numerous

- 12 -
OPPOSITION

creditors in order to remedy one creditor's missed opportunity to attend an initial meeting of creditors would be disproportionate where that opportunity can instead be restored directly.

**F. Prior Bankruptcy Filings Do Not Automatically Establish Bad Faith in This Chapter 11 Case**

The Motion relies substantially on Debtor's prior bankruptcy filings. Prior cases may be relevant to a totality-of-circumstances analysis, but they are not dispositive. The Court must evaluate the present case on its own record. The Ninth Circuit's totality analysis considers several factors, including misrepresentation, unfair manipulation of the Code, the debtor's filing history, efforts to defeat state-court litigation, and egregious conduct; no single factor is dispositive. See Leavitt, In re, 171 F.3d 1219, 1224-25 (9th Cir. 1999).

This case is a Chapter 11 case, not another Chapter 7 case. That distinction is central. Debtor's prior cases were dismissed because Debtor sought Chapter 7 relief when she was not eligible for Chapter 7 relief, and the Court repeatedly found that Debtor should have filed under Chapter 11 instead. Debtor has now done exactly that. The present case therefore cures the chapter-selection problem identified in the prior cases; it does not repeat it.

The Chapter 11 process imposes ongoing fiduciary duties, operating-report obligations, disclosure obligations, plan-filing requirements, creditor voting rights, and confirmation standards. If Debtor cannot propose a confirmable plan, Lemkin and other parties may object at the appropriate time. But the existence of prior Chapter 7 dismissals—based on Debtor's ineligibility for Chapter 7 relief—does not justify ending this Chapter 11 case before Debtor has a meaningful opportunity to proceed under the chapter the Court previously indicated was appropriate.

Debtor does not minimize the concerns expressed by the Court in connection with her prior bankruptcy cases. Those proceedings, however, must be considered in their actual procedural and factual context rather than treated as establishing a permanent presumption that any future bankruptcy filing by Debtor is necessarily undertaken in bad faith.

The prior cases were Chapter 7 proceedings, and the circumstances surrounding those filings were materially different from those presented here. Certain of those cases were commenced under the advice and case structures developed by Debtor's then-counsel. Current bankruptcy counsel did not originate that strategy. When current counsel substituted into one of Debtor's prior cases after its commencement, counsel attempted to address the circumstances inherited from the existing case and preserve whatever bankruptcy relief remained available to Debtor.

Debtor's immediately preceding case likewise must be considered in light of her circumstances at that time. Debtor experienced a period of unemployment but thereafter regained employment, materially changing the financial circumstances under which that Chapter 7 case had been commenced and contributing to the determination that she could not remain in Chapter 7. Although conversion to Chapter 11 was theoretically available, the sudden transition from unemployment back into employment did not mean that Debtor was immediately positioned to undertake the substantially different financial and procedural obligations associated with an individual Chapter 11 reorganization.

Approximately one year later, the circumstances are materially different. Debtor has remained gainfully employed and now seeks to proceed from the outset under Chapter 11. She is not again asking the Court to permit her to remain in Chapter 7 notwithstanding the concerns previously expressed regarding her income and ability to repay creditors. She has instead accepted the consequence of those prior proceedings and commenced a case under the chapter that requires her to disclose her current financial circumstances, formulate a proposal for repayment or adjustment of her debts, submit that proposal to creditor scrutiny, and satisfy the applicable confirmation requirements.

The prior proceedings therefore warrant careful scrutiny of Debtor's conduct in this case, but they do not answer the question presently before the Court. The relevant inquiry remains whether this Chapter 11 case, filed under materially different circumstances and after expiration of the prior refiling bar, itself constitutes an abuse of the bankruptcy process. Debtor should be

judged based upon her conduct and ability to proceed under Chapter 11 now, rather than being categorically denied access to Chapter 11 because prior attempts to obtain Chapter 7 relief were unsuccessful.

The Motion's position would effectively transform the prior Chapter 7 eligibility rulings and refiling bars into a much broader permanent disability. That is not what the prior orders did. Debtor filed this case after the expiration of the prior bar and under the chapter the Court indicated she should use. Having done so, she is entitled to have the present case evaluated under the present Chapter 11 record.

**F. The Motion Prematurely Demands Confirmation-Stage Proof Before Debtor Has Had an Opportunity to Proceed Through the Chapter 11 Process**

The Motion further argues that Debtor's schedules do not presently demonstrate a "realistic reorganization" because they do not identify a completed transaction or presently demonstrate sufficient disposable income to fund a plan. That argument effectively requires Debtor to prove, at the outset of the case and in opposition to a motion to dismiss, matters ordinarily developed through the Chapter 11 plan and disclosure process.

Debtor does not contend that the mere filing of a Chapter 11 petition insulates a case from scrutiny under section 1112(b). But neither does section 1112(b) require an individual Chapter 11 debtor, at the commencement of the case, to have already completed the financial analysis, negotiations, projections, and other work necessary to establish every element ultimately required for confirmation. Those matters are developed through the bankruptcy process, including the preparation of a plan and disclosure statement, continuing financial disclosure, creditor discovery and participation, and ultimately the confirmation process itself.

The Motion thus places Debtor in an untenable procedural position. Lemkin criticizes Debtor for not yet proving the details and feasibility of a Chapter 11 plan while simultaneously seeking dismissal before Debtor can undertake the very Chapter 11 process through which those matters are developed, disclosed, tested, and ultimately adjudicated. The absence of a fully developed plan at this early stage does not establish that the petition itself was filed in bad faith.

Nor is this a case in which the Chapter 11 process has already run its course without progress toward reorganization. Debtor has not failed to meet a plan deadline, failed to obtain approval of a disclosure statement, or proposed a plan that the Court has determined cannot be confirmed. The Motion instead asks the Court to predict failure before Debtor has been afforded a meaningful opportunity to formulate and present her proposed treatment of creditors.

If Debtor ultimately cannot propose a confirmable plan, the Bankruptcy Code provides ample remedies at that time. Lemkin and other parties in interest may challenge Debtor's projections, proposed funding, creditor treatment, feasibility, and compliance with the applicable confirmation requirements. What Lemkin should not be permitted to do is treat the absence of confirmation-stage proof at the beginning of the case as itself establishing bad faith and then use that asserted absence as the basis for preventing Debtor from reaching the stage at which such proof is properly presented.

**G. The Motion Does Not Establish That Conversion or Dismissal Is in the Best Interests of Creditors and the Estate**

Even where cause exists, section 1112(b) requires the Court to determine whether dismissal or conversion is in the best interests of creditors and the estate. Sullivan, *supra,* at 613. The Motion assumes dismissal is best because Lemkin wants to resume collection. But Lemkin's preference as a judgment creditor is not the same as the best interests of all creditors and the estate.

Chapter 11 provides a collective forum. It prevents a race to collection, requires disclosure, allows creditor participation, and creates a mechanism for a plan that treats creditors according to the Bankruptcy Code. Dismissal would primarily benefit Lemkin by allowing it to resume individual collection activity. The Motion does not establish that dismissal would be better for all creditors than allowing Debtor to attempt a supervised reorganization.

If the Court has concerns about case administration, those concerns can be addressed through status conferences, reporting requirements, deadlines for filing a plan and disclosure statement, or other case-management orders. Immediate dismissal is not necessary.

Finally, Chapter 11 also provides substantial safeguards if the Court later determines that Debtor cannot appropriately remain in possession or that additional oversight is required. Unlike a proceeding in which dismissal is the only practical means of addressing misconduct, the Chapter 11 framework provides multiple intermediate remedies. The United States Trustee and parties in interest may monitor Debtor's compliance with her fiduciary, reporting, and disclosure obligations; seek examinations and document production; challenge the adequacy of disclosure; oppose confirmation; and seek the appointment of a Chapter 11 trustee or examiner where the statutory standards are satisfied. The Court likewise retains continuing authority to impose deadlines, require additional reporting, and revisit dismissal or conversion if cause actually develops.

Accordingly, the Motion presents a false choice between immediate dismissal and leaving creditors without protection. If Debtor fails to meet the standards imposed upon a debtor-in-possession, Chapter 11 contains substantial safeguards and remedies capable of protecting the estate and creditor body without prematurely terminating the case. The existence of those protections is particularly significant at this early stage, before Debtor has had an opportunity to propose a plan and before the Court can evaluate her performance under the obligations that distinguish this Chapter 11 case from her prior Chapter 7 proceedings.

**H. A Two-Year or Longer Refiling Bar Is an Extraordinary Remedy and Is Not Warranted**

The Motion's request for a two-or-more-year refiling bar should be denied. A refiling bar beyond the ordinary consequences of dismissal is severe relief. The party seeking a dismissal with prejudice under section 349(a) bears the burden of persuasion, and the remedy should be reserved for a record showing abuse that cannot be addressed through ordinary bankruptcy remedies. See Duran v. Gudino (In re Duran), 630 B.R. 797, 807-10 (B.A.P. 9th Cir. 2021).

That record is not present here. Debtor filed this case after the prior bar expired. The asserted notice issue is curable. Debtor's counsel identified the potential issue after the 341(a)

---

- 17 -
OPPOSITION

hearing and offered meaningful remedial measures, including payment for Lemkin to attend her own Rule 2004 examination. These facts do not justify a punitive filing injunction.

At a minimum, the request for a two-year bar is premature. The Court has not yet tested Debtor's Chapter 11 prospects through plan deadlines, disclosure, creditor objections, or confirmation. If Debtor later fails to prosecute the case, fails to comply with reporting requirements, fails to propose a feasible plan, or otherwise abuses the Chapter 11 process, parties may seek appropriate relief on that future record. The present record does not support the extraordinary relief requested.

## I.    The State-Court Disputes Do Not Establish Cause to Dismiss This Chapter 11 Case.

Lemkin devotes substantial attention to events from the parties' state-court litigation and judgment-enforcement history. Debtor does not ask this Court to revisit or relitigate those matters in the context of this Motion. The issue before the Court is narrower: whether this Chapter 11 case was filed in bad faith and whether dismissal or conversion is in the best interests of creditors and the estate under section 1112(b).

The state-court history does not establish that this Chapter 11 case lacks a legitimate bankruptcy purpose.  Debtor filed this case under Chapter 11, the chapter the Court previously indicated was the proper chapter if Debtor sought bankruptcy relief.  Chapter 11 provides a supervised process for disclosure, creditor participation, plan negotiation, and confirmation. Lemkin may use the tools available in this case, including 2004 discovery, objections to disclosure, objections to confirmation, and any appropriate claims litigation to test Debtor's disclosures and proposed treatment.

What Lemkin may not do is convert disputed state-court grievances and collection history into automatic cause for dismissal.  The Bankruptcy Court should evaluate this case based on the present Chapter 11 record, not as collateral forum for relitigating every dispute between the parties.

## IV.

## CONCLUSION

The Motion rests on an exaggerated characterization of a curable address issue and an overbroad reading of Debtor's prior bankruptcy history. The prior cases were dismissed because Debtor filed under Chapter 7 when she was not eligible for Chapter 7 relief, and the Court repeatedly indicated that Debtor should have filed under Chapter 11 instead. Debtor has now filed under Chapter 11. The address used for Lemkin was the same address used or seen used in three prior cases. When Debtor's counsel realized after the 341(a) hearing that there may have been a notice issue, counsel reached out, offered to update the address, offered to pay for Lemkin to attend her own Rule 2004 examination, and provided the audio of the 341(a) hearing to Lemkin's counsel on Friday, July 17, 2026. The hearing itself lasted only approximately fifteen minutes and, given the 1:30 p.m. hearing that United States Trustee attorney Kenneth Miskin and Debtor's counsel both had to attend, could not have lasted materially longer that day.

Those facts do not establish bad faith. They show a curable issue and an effort to cure it. Debtor respectfully requests that the Court deny the Motion in its entirety. Alternatively, Debtor requests that the Court impose only targeted curative relief, such as requiring an amended creditor matrix, renewed notice, a continued or reconvened meeting of creditors, expedited Rule 2004 discovery, or other case-management relief the Court deems appropriate.

Date:  July 22, 2026                    Signed:/S/ ANERIO V. ALTMAN, ESQ.
                                      ANERIO V. ALTMAN, ESQ.
                                      ATTORNEY FOR DEBTOR
                                      SUSAN WHITE

## **DECLARATION OF ANERIO V. ALTMAN, ESQ.**

I, ANERIO V. ALTMAN, ESQ. declare as follows:

1. I am over the age of 18 years old and I am legally able and competent to testify to the following in a court of law.

2. I am the attorney to Debtor Susan J. White in this bankruptcy proceeding.

3. I was the attorney to Susan J. white in two prior bankruptcy proceedings.

4. I am familiar with the court's CM/ECF system and I have printed out true and correct copies of certain documents from several cases filed in the Southern and Central Districts of California. Those documents are attached hereto as exhibits.

5. Attached as "Exhibit A" are the four separate listings on Schedule E/F for Creditor Hollie Lemkin used previously by the Debtor. The first such filing was in the Southern District of California on April 8, 2021 and docketed as 21-01414-LT7. The second such filing was technically the transferred case from the Southern District, now docketed as 8:21-bk-12064-SC. The third such filing was filed on April 18, 2022 and docketed as 8:22-bk-10652-SC. The fourth such filing was filed on January 25, 2024 and docketed as 8:24-bk-10187-SC.

6. In each of these filings, as demonstrated by the exhibit, the address used for "Law Offices of Hollie A. Lemkin" was "Law Office of Hollie A. Lemkin, Law Office of John Teal, 23 Corporate Plaza Drive Suite 150, Newport Beach, CA 92660." *See also* ECF No. 12.

7. I have examined the various filings and to the best of my understanding no party had previously asserted that this address was incorrect.

8. Attached as "Exhibit B" are the orders from Docket #21-12064 dismissing her "first" filing (transferred from San Diego) under 707(b)(2) & (3) unless "Debtor elects to convert

---

- 20 -
OPPOSITION

to Chapter 11 by or before February 24, 2022." Following that order is the stipulation filed in her "second" filing agreeing to dismiss her matter as such was appropriate under 11 U.S.C. Sec. 707(b)(2). See Page 3, Recital I. Finally, attached are pages 6-9 of Creditor Hollie Lemkin's Motion To Dismiss filed in Ms. White's "third" filing on June 12, 2024 in docket #8:24-bk-10187-SC arguing that it would be an abuse under 11 U.S.C. Sec. 707(b)(3) for her to remain in Chapter 7 because her income is sufficient to fund a Chapter 11 Plan.

9. Following the filing of the bankruptcy case, I provided the Notice of Bankruptcy Filing to my client who in turn informed me that it was provided to her employer. The reason that this was provided to the employer in this matter was that Ms. White was suffering under two garnishments at the time of filing and we wanted those garnishments to cease. This notice would be provided to the civil authorities enforcing the garnishment, who then would provide the same to the Creditor. This is our normal *modus operandi* in most bankruptcy cases with similar facts. In our experience, we do this because the civil authorities tend to react more quickly and tend to be sometimes more reliable in ceasing collections when notice is provided by the employer in this manner

10. The garnishment did not cease, and we thought this was due to the Debtor's employer. The Debtor's employer is not U.S. based and had difficulty processing the Notice of Bankruptcy Filing and initially refused to do so. For this reason, we believed the issue for the garnishment ceasing was due to her employer, not a lack of notice to Ms. Lemkin.

11. Based on Ms. Lemkin's actions in the prior matters, I expected Ms. Lemkin to appear, by counsel at the 341a hearing.

12. Prior to the 341a hearing at 1:15 P.M., I informed the United States Trustee's counsel, Kenneth Miskin, that we could not attend longer than 15 minutes because both myself, and Mr. Miskin, were required to appear before the Honorable Judge Mark Houle at 1:30 P.M. on July 7, 2026 in In Re Brandcasters, Inc. 8:26-bk-11374-MH.

13. The 341a hearing at the time took no longer than 15 minutes and consisted solely of Mr. Miskin asking questions of the Debtor.  The 341a hearing was concluded at that time.

14. On July 15, 2026, still not having received any communication, I reached out to Mr. Richard Heston and Mr. Ben Heston to ensure that their client was aware of the bankruptcy filing.  A copy of that email was attached to the Motion.

15. On July 15, 2026, I offered to make Ms. White available for a 2004 exam.  A true and accurate copy of that email is attached as an exhibit.  Exhibit C.

16. On July 17, 2026, we offered to pay for the court reporter for a prospective 2004 exam, from my office's funds, not as an expense from the estate, and we also provided a copy of the 341a hearing recording.  A true and accurate copy of that email is attached as an exhibit.  Exhibit D.

17. Attached is a true and correct copy of Docket #12 from this matter.  Exhibit E.

18. I make these declarations under penalty of perjury of the laws of the United States and know that they are true.

Dated:  July 22, 2026                                         Signed:/S/ ANERIO V. ALTMAN, ESQ.
                                                                          ANERIO V. ALTMAN, ESQ.
                                                                          ATTORNEY FOR
                                                                          DEBTOR-IN-POSSESSION
                                                                          SUSAN JO WHITE

EXHIBIT A

Debtor 1   **Susan Jo White**                                    Case number (if known) _____

| 4.1 4 | **Internal Revenue Service** | Last 4 digits of account number _____ | | $247,589.00 |

Nonpriority Creditor's Name
P.O. Box 7704
San Francisco, CA 94120-7704
Number Street City State Zip Code

When was the debt incurred?   **2013-2019**

Who incurred the debt? Check one.

As of the date you file, the claim is: Check all that apply

- ☒ Debtor 1 only
- ☐ Debtor 2 only
- ☐ Debtor 1 and Debtor 2 only
- ☐ At least one of the debtors and another
- ☐ Check if this claim is for a community debt

Is the claim subject to offset?

- ☒ No
- ☐ Yes

- ■ Contingent
- ■ Unliquidated
- ■ Disputed

Type of NONPRIORITY unsecured claim:

- ☐ Student loans
- ☐ Obligations arising out of a separation agreement or divorce that you did not report as priority claims
- ☐ Debts to pension or profit-sharing plans, and other similar debts
- ■ Other. Specify   **Income Taxes**

---

| 4.1 5 | **John C. Mulvana, Esq.** | Last 4 digits of account number _____ | | $150,000.00 |

Nonpriority Creditor's Name
216 Esplanade
San Clemente, CA 92672
Number Street City State Zip Code

When was the debt incurred?   **Various**

Who incurred the debt? Check one.

As of the date you file, the claim is: Check all that apply

- ☒ Debtor 1 only
- ☐ Debtor 2 only
- ☐ Debtor 1 and Debtor 2 only
- ☐ At least one of the debtors and another
- ☐ Check if this claim is for a community debt

Is the claim subject to offset?

- ☒ No
- ☐ Yes

- ☐ Contingent
- ☐ Unliquidated
- ☐ Disputed

Type of NONPRIORITY unsecured claim:

- ☐ Student loans
- ☐ Obligations arising out of a separation agreement or divorce that you did not report as priority claims
- ☐ Debts to pension or profit-sharing plans, and other similar debts
- ■ Other. Specify   **Legal Fees**

---

| 4.1 6 | **Law Office of Hollie A. Lemkin** | Last 4 digits of account number _____ | | $468,549.52 |

Nonpriority Creditor's Name
Law Office of John Teal
23 Corporate Plaza Dr. Ste 150
Newport Beach, CA 92660
Number Street City State Zip Code

When was the debt incurred?   **January 2021**

Who incurred the debt? Check one.

As of the date you file, the claim is: Check all that apply

- ☒ Debtor 1 only
- ☐ Debtor 2 only
- ☐ Debtor 1 and Debtor 2 only
- ☐ At least one of the debtors and another
- ☐ Check if this claim is for a community debt

Is the claim subject to offset?

- ☒ No
- ☐ Yes

- ☐ Contingent
- ☐ Unliquidated
- ☐ Disputed

Type of NONPRIORITY unsecured claim:

- ☐ Student loans
- ☐ Obligations arising out of a separation agreement or divorce that you did not report as priority claims
- ☐ Debts to pension or profit-sharing plans, and other similar debts
- ■ Other. Specify   **Judgment**

---

Debtor 1   Susan Jo White _____     Case number (if known) _____

| 4.1 4 | **Internal Revenue Service** | Last 4 digits of account number _____ | **$247,589.00** |
|---|---|---|---|

Nonpriority Creditor's Name
P.O. Box 7704
San Francisco, CA 94120-7704
Number Street City State Zip Code

Who incurred the debt? Check one.

☒ Debtor 1 only
☐ Debtor 2 only
☐ Debtor 1 and Debtor 2 only
☐ At least one of the debtors and another
☐ Check if this claim is for a community debt

Is the claim subject to offset?

☒ No
☐ Yes

When was the debt incurred?   **2013-2019**

As of the date you file, the claim is: Check all that apply

☒ Contingent
☒ Unliquidated
☒ Disputed

Type of NONPRIORITY unsecured claim:

☐ Student loans
☐ Obligations arising out of a separation agreement or divorce that you did not report as priority claims
☐ Debts to pension or profit-sharing plans, and other similar debts
☒ Other. Specify   **Income Taxes**

---

| 4.1 5 | **John C. Mulvana, Esq.** | Last 4 digits of account number _____ | **$150,000.00** |
|---|---|---|---|

Nonpriority Creditor's Name
216 Esplanade
San Clemente, CA 92672
Number Street City State Zip Code

Who incurred the debt? Check one.

☒ Debtor 1 only
☐ Debtor 2 only
☐ Debtor 1 and Debtor 2 only
☐ At least one of the debtors and another
☐ Check if this claim is for a community debt

Is the claim subject to offset?

☒ No
☐ Yes

When was the debt incurred?   **Various**

As of the date you file, the claim is: Check all that apply

☐ Contingent
☐ Unliquidated
☐ Disputed

Type of NONPRIORITY unsecured claim:

☐ Student loans
☐ Obligations arising out of a separation agreement or divorce that you did not report as priority claims
☐ Debts to pension or profit-sharing plans, and other similar debts
☒ Other. Specify   **Legal Fees**

---

| 4.1 6 | **Law Office of Hollie A. Lemkin** | Last 4 digits of account number _____ | **$468,549.52** |
|---|---|---|---|

Nonpriority Creditor's Name
Law Office of John Teal
23 Corporate Plaza Dr. Ste. 150
Newport Beach, CA 92660
Number Street City State Zip Code

Who incurred the debt? Check one.

☒ Debtor 1 only
☐ Debtor 2 only
☐ Debtor 1 and Debtor 2 only
☐ At least one of the debtors and another
☐ Check if this claim is for a community debt

Is the claim subject to offset?

☒ No
☐ Yes

When was the debt incurred?   **January 2021**

As of the date you file, the claim is: Check all that apply

☐ Contingent
☐ Unliquidated
☐ Disputed

Type of NONPRIORITY unsecured claim:

☐ Student loans
☐ Obligations arising out of a separation agreement or divorce that you did not report as priority claims
☐ Debts to pension or profit-sharing plans, and other similar debts
☒ Other. Specify   **Judgment**

---

| 4.6 | Law Office of Hollie A. Lemkin | | |
|---|---|---|---|

**4.6**

Law Office of Hollie A. Lemkin
Nonpriority Creditor's Name

Law Office of John Teal
Number    Street

23 Corporate Plaza Dr #150

Newport Beach CA    92660
City            State    ZIP Code

**Who owes the debt?** Check one.
☑ Debtor 1 only
☐ Debtor 2 only
☐ Debtor 1 and Debtor 2 only
☐ At least one of the debtors and another
☐ Check if this claim relates to a community debt

**Is the claim subject to offset?**
☑ No
☐ Yes

**Last 4 digits of account number**
**When was the debt incurred?** 01/01/2013

**As of the date you file, the claim is:** Check all that apply.
☐ Contingent
☑ Unliquidated
☑ Disputed

**Type of NONPRIORITY unsecured claim:**
☐ Student loans
☐ Obligations arising out of a separation agreement or divorce that you did not report as priority claims
☐ Debts to pension or profit-sharing plans, and other similar debts
☑ Other. Specify  Subject of Lawsuit listed on SOFA

$ 522,717.93

---

**4.7**

Nordstrom VISA
Nonpriority Creditor's Name

PO Box 6555
Number    Street

Englewood CO    80155
City            State    ZIP Code

**Who owes the debt?** Check one.
☑ Debtor 1 only
☐ Debtor 2 only
☐ Debtor 1 and Debtor 2 only
☐ At least one of the debtors and another
☐ Check if this claim relates to a community debt

**Is the claim subject to offset?**
☑ No
☐ Yes

**Last 4 digits of account number** 7466
**When was the debt incurred?** 01/01/2012

**As of the date you file, the claim is:** Check all that apply.
☐ Contingent
☐ Unliquidated
☐ Disputed

**Type of NONPRIORITY unsecured claim:**
☐ Student loans
☐ Obligations arising out of a separation agreement or divorce that you did not report as priority claims
☐ Debts to pension or profit-sharing plans, and other similar debts
☑ Other. Specify  Credit Card Debt

$ 23,612.00

---

**4.8**

Robert Stidham
Nonpriority Creditor's Name

PO Box 13330
Number    Street

Scottsdale AZ    85267
City            State    ZIP Code

**Who owes the debt?** Check one.
☑ Debtor 1 only
☐ Debtor 2 only
☐ Debtor 1 and Debtor 2 only
☐ At least one of the debtors and another
☐ Check if this claim relates to a community debt

**Is the claim subject to offset?**
☑ No
☐ Yes

**Last 4 digits of account number**
**When was the debt incurred?** _____

**As of the date you file, the claim is:** Check all that apply.
☐ Contingent
☐ Unliquidated
☐ Disputed

**Type of NONPRIORITY unsecured claim:**
☐ Student loans
☐ Obligations arising out of a separation agreement or divorce that you did not report as priority claims
☐ Debts to pension or profit-sharing plans, and other similar debts
☑ Other. Specify  Monies Loaned / Advanced

$ 16,200.00

---

**Part 3:    List Others to Be Notified About a Debt That You Already Listed**

5. Use this page only if you have others to be notified about your bankruptcy, for a debt that you already listed in Parts 1 or 2. For example, if a collection agency is trying to collect from you for a debt you owe to someone else, list the original creditor in Parts 1 or 2, then list the collection agency here. Similarly, if you have more than one creditor for any of the debts that you listed in Parts 1 or 2, list the additional creditors here. If you do not have additional persons to be notified for any debts in Parts 1 or 2, do not fill out or submit this page.

Debtor 1    Susan _____ Jo _____ White _____    Case number (if known) _____
          First Name    Middle Name    Last Name

| Part 2: | Your NONPRIORITY Unsecured Claims — Continuation Page |
|---|---|

After listing any entries on this page, number them beginning with 4.4, followed by 4.5, and so forth.    **Total claim**

**4.8** Law Office of Hollie A. Lemkin
Nonpriority Creditor's Name
Law Office of John Teal

23 Corporate Plaza Dr #150
Number          Street

Newport Beach, CA 92660
City          State          ZIP Code

**Who incurred the debt?** Check one.
☑ Debtor 1 only
☐ Debtor 2 only
☐ Debtor 1 and Debtor 2 only
☐ At least one of the debtors and another
☐ Check if this claim is for a community debt

**Is the claim subject to offset?**
☑ No
☐ Yes

Last 4 digits of account number __ __ __ __

**When was the debt incurred?**    1/1/2013

**As of the date you file, the claim is:** Check all that apply.
☐ Contingent
☐ Unliquidated
☑ Disputed

**Type of NONPRIORITY unsecured claim:**
☐ Student loans
☐ Obligations arising out of a separation agreement or divorce that you did not report as priority claims
☐ Debts to pension or profit-sharing plans, and other similar debts
☑ Other. Specify   Subject of Lawsuit listed on SOFA

$540,476.62

**Remarks:** This claim is disputed only to the extent that Creditor claims it is non-dischargeable.

**4.9** Macys/fdsb
Nonpriority Creditor's Name
Attn: Bankruptcy

9111 Duke Boulevard
Number          Street

Mason, OH 45040
City          State          ZIP Code

**Who incurred the debt?** Check one.
☑ Debtor 1 only
☐ Debtor 2 only
☐ Debtor 1 and Debtor 2 only
☐ At least one of the debtors and another
☐ Check if this claim is for a community debt

**Is the claim subject to offset?**
☑ No
☐ Yes

Last 4 digits of account number   6   1   8   0

**When was the debt incurred?**    10/1/2003

**As of the date you file, the claim is:** Check all that apply.
☐ Contingent
☐ Unliquidated
☐ Disputed

**Type of NONPRIORITY unsecured claim:**
☐ Student loans
☐ Obligations arising out of a separation agreement or divorce that you did not report as priority claims
☐ Debts to pension or profit-sharing plans, and other similar debts
☑ Other. Specify   ChargeAccount

$0.00

**4.10** Macys/fdsb
Nonpriority Creditor's Name
Attn: Bankruptcy

9111 Duke Boulevard
Number          Street

Mason, OH 45040
City          State          ZIP Code

**Who incurred the debt?** Check one.
☑ Debtor 1 only
☐ Debtor 2 only
☐ Debtor 1 and Debtor 2 only
☐ At least one of the debtors and another
☐ Check if this claim is for a community debt

**Is the claim subject to offset?**
☑ No
☐ Yes

Last 4 digits of account number   7   5   5   8

**When was the debt incurred?**    1/9/2020

**As of the date you file, the claim is:** Check all that apply.
☐ Contingent
☐ Unliquidated
☐ Disputed

**Type of NONPRIORITY unsecured claim:**
☐ Student loans
☐ Obligations arising out of a separation agreement or divorce that you did not report as priority claims
☐ Debts to pension or profit-sharing plans, and other similar debts
☑ Other. Specify   ChargeAccount

$0.00

EXHIBIT B

RICHARD G. HESTON, Bar No. 90738
HALLI B. HESTON, Bar No. 90737
BENJAMIN R5. HESTON, Bar No. 297798
HESTON & HESTON, Attorneys at Law
19700 Fairchild Road, Suite 280
Irvine, CA 92612
(949) 222-1041
(949) 222-1043 Fax
rheston@hestonlaw.com

Attorneys for Creditor HOLLIE LEMKIN

FILED & ENTERED

FEB 28 2022

CLERK U.S. BANKRUPTCY COURT
Central District of California
BY jle          DEPUTY CLERK

**UNITED STATES BANKRUPTCY COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**SANTA ANA DIVISION**

In re

SUSAN JO WHITE,

   Debtor.

)
)
)
)
)
)
)
)
)
)
)
)
)

Case No. : 8:21-bk-12064-ES

Chapter 7

**ORDER GRANTING MOTION TO TO DISMISS CASE PURSUANT TO SECTION 707(b)(2) & (3)**

Date: February 17, 2022
Time: 10:00 a.m.
Ctrm: 5A

Notice having been duly given and good cause appearing therefore,

IT IS ORDERED that the Motion to Dismiss Chapter 7 Case Pursuant to Section 707(b)(2)& (3), filed by Creditor HOLLIE LEMKIN on November 30, 2021 as Docket 73. is granted unless Debtor elects to convert to Chapter 11 by or before February 24, 2022. Failure to convert to Chapter 11 will result in the dismissal of the case on February 25, 2022.

Date: February 28, 2022

Erithe Smith
United States Bankruptcy Judge

PETER C. ANDERSON
UNITED STATES TRUSTEE
Kenneth M. Misken
Assistant United States Trustee
Kristin T. Mihelic, Bar No. 278483
Trial Attorney for the United States Trustee
UNITED STATES TRUSTEE
411 West Fourth St. #7160
Santa Ana, CA 92701
714-338-3400
E-mail: kristin.t.mihelic@usdoj.gov

# UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA

### SANTA ANA DIVISION

| | |
|---|---|
| In re<br><br>SUSAN JO WHITE,<br><br>                Debtor. | Case No. 8:22-bk-10652-SC<br><br>Chapter 7<br><br>**APPLICATION FOR APPROVAL OF STIPULATION AND STIPULATION TO DISMISS CASE PURSUANT TO 11 U.S.C. § 707(b)(2) WITH A 180-DAY BAR TO RE-FILING PURSUANT TO 11 U.S.C. §§ 105(a) AND 349(a)**<br><br>[No Hearing Required] |

The United States Trustee (the "U.S. Trustee"), by his undersigned counsel, and Susan Jo White (the "Debtor"), by her undersigned counsel, (collectively, the "Parties"), do hereby stipulate and agree as follows.

### Recitals

This stipulation is entered into with reference to the following facts:

A.      On April 18, 2022, the Debtor filed a petition for chapter 7 bankruptcy relief in the United States Bankruptcy Court for the Central District of California, assigned case number 8:22-bk-10652-SC.

B. On June 20, 2022, the Debtor filed her Amended Schedule E/F. On her Amended Schedule E/F, the Debtor listed $770,929 in unsecured debts.

C. On June 20, 2022, the Debtor filed her Amended Schedule I. On her Amended Schedule I, the Debtor stated that she has been employed in outside sales for Riverbed Technology, Inc. for four years earning monthly gross wages of $15,568.

D. On June 28, 2022, the Debtor filed her Amended Official Form 122A-2 ("Means Test Form"). On her Amended Means Test Form, the Debtor listed her Adjusted Current Monthly Income as $16,521 and her Deductions as $19,681.

E. Beginning on May 17, 2022, the U.S. Trustee communicated with Debtor's counsel requesting that the Debtor provide information and documents about her income, expenses, and paycheck deductions. In response, the Debtor provided some of the requested documents. The U.S. Trustee continued to work with counsel to obtain the documents, including documents responsive to the U.S. Trustee's subsequent requests.

F. Beginning on June 23, 2022, the U.S. Trustee made his first appearance at the Debtor's 341(a) meeting of creditors. The U.S. Trustee asked the Debtor questions regarding her income, expenses, paycheck deductions, and financial contributions from third parties for her benefit. The Chapter 7 Trustee continued the § 341(a) meeting of creditors to July 5, July 25, August 8, August 29, and September 12, 2022, for the Debtor to produce additional documents and file amendments to her Schedules, Statement of Financial Affairs, and Means Test Form. The U.S. Trustee's most recent request to the Debtor for additional documents and additional amendments to her Means Test Form was on September 1, 2022 and was based upon documents the Debtor produced on or about August 29, 2022.

G. Based on the information obtained by the U.S. Trustee, the Debtor's Amended Means Test Form includes deductions to which the Debtor is not entitled and does not disclose all sources of income. Based on the U.S. Trustee's analysis, the Debtor's case is presumptively abusive, and the Debtor cannot rebut the presumption.

H.    On September 6, 2022, the Debtor informed the U.S. Trustee that she wished to enter into an agreement for a dismissal of her case under § 707(b)(2). Because the Debtor's case was the second instance of filing a bankruptcy petition within a one-year period, the U.S. Trustee requested that the Debtor agree to be barred from re-filing any case under the bankruptcy code for a period of 180 days. The Debtor further agreed to be barred from re-filing any case under the bankruptcy code for a period of 180 days.

I.    Based on the foregoing, the U.S. Trustee and the Debtor agree that dismissal of the Debtor's bankruptcy case is appropriate under § 707(b)(2).

J.    The Parties are entering into this stipulation freely and voluntarily.

K.    Therefore, the Parties respectfully request that this stipulation be approved, and accompanying Order be entered.

## Stipulation

The U.S. Trustee and Debtor hereby agree that this chapter 7 case be dismissed pursuant to 11 U.S.C. § 707(b)(2).

The U.S. Trustee and Debtor further agree that the Debtor be barred from being a debtor under any chapter of the Bankruptcy Code for a period of 180 days pursuant to 11 U.S.C. §§ 105(a) and 349(a).

IT IS SO STIPULATED.

Dated: 9/8/2022                          By: _____
                                              Anerio Altman, Attorney for Susan Jo
                                              White

Dated: September 7, 2022                 United States Trustee

                                         By: /s/ Kristin T. Mihelic
                                              Kristin T. Mihelic
                                              Trial Attorney

Case 8:22-bk-10652-SC    Doc 82    Filed 09/09/22    Entered 09/09/22 13:05:12    Desc
Main Document    Page 4 of 52

## PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is:
OFFICE OF THE U.S. TRUSTEE, 411 W. 4TH STREET, #7160, SANTA ANA, CA  92701

A true and correct copy of the foregoing document described as APPLCATION FOR APPROVAL OF STIPULATION AND STIPULATION TO DISMISS CASE PURSUANT TO 11 U.S.C. §707(b)(2) WITH A 180 DAY BAR TO RE-FILING PURSUANT TO 11 U.S.C. §§105(a) and 349(a)

will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner indicated below:

**I.  TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING ("NEF")** – Pursuant to controlling General Order(s) and Local Bankruptcy Rule(s) ("LBR"), the foregoing document will be served by the court via NEF and hyperlink to the document. On **September 9, 2022,** I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following person(s) are on the Electronic Mail Notice List to receive NEF transmission at the email address(es) indicated below.

- Anerio V Altman    LakeForestBankruptcy@jubileebk.net, lakeforestpacer@gmail.com
- Thomas H Casey (TR)    msilva@tomcaseylaw.com, thc@trustesolutions.net
- Richard G. Heston    rheston@hestonlaw.com, yflores@hestonlaw.com,docs@hestonlaw.com;HestonRR41032@notify.bestcase.com,handhecf@gmail.com
- Bill J Parks    attparks@aol.com
- United States Trustee (SA)    ustpregion16.sa.ecf@usdoj.gov

**II.  SERVED BY U.S. MAIL OR OVERNIGHT MAIL**(indicate method for each person or entity served):  On **September 9, 2022,** I served the following person(s) and/or entity(ies) at the last known address(es) in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States Mail, first class, postage prepaid, and/or with an overnight mail service addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge <u>will be</u> completed no later than 24 hours after the document is filed

**SEE SUPPLEMENTAL PROOF OF SERVICE**

**III.  SERVED BY PERSONAL DELIVERY, FACSIMILE TRANSMISSION OR EMAIL** (indicate method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on **September 9, 2022,** I served the following person(s) and/or entity(ies) by personal delivery, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on the judge <u>will be</u> completed no later than 24 hours after the document is filed.

      I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

| September 9, 2022 | Tari King | /s/ Tari King |
|---|---|---|
| *Date* | *Type Name* | *Signature* |

1

The amounts and categorization of Debtor's tax debts is different than how they were scheduled in her prior cases. Presumably this was done because treating these non-priority tax debts as secured would help her pass the Means Test.

In Debtor's Schedule J, she lists her net monthly income as $3,119.55, yet she offers no explanation as to why her disposable income should not be used to pay her creditors. Chapter 7 bankruptcy is intended for debtors who genuinely cannot repay their debts, not for those with significant disposable income.

**2.**

**A MOTION TO DISMISS PURSUANT TO SECTION 707(b)(3) BASED ON THE TOTALITY OF CIRCUMSTANCES REQUIRES ONLY A SHOWING OF "ABUSE," NOT THE HIGHER PRE-BAPCPA STANDARD OF "SUBSTANTIAL ABUSE"**

Where the totality of the circumstances of the debtor's situation demonstrates "abuse," dismissal is appropriate. This was held to be the case even before the enactment of BAPCPA. In re Price, 353 F.3d 1135, 1138 (9th Cir. 2004). Moreover, this remains true even where the debtor passes the Means Test. "Even if a presumption of abuse does not arise, however, the court may still dismiss a Chapter 7 bankruptcy case for abuse under the alternative tests of § 707(b)(3)." In re Miller, 2:13-bk-35116-RK, at *1 (Bankr. C.D. Cal. Sep. 9, 2015). See also In re Reed, 422 B.R. 214, 229-230 (Dist.C.D.Cal. 2009). "While BAPCPA changed the standard for dismissal in this context from "substantial abuse" to "abuse," in analyzing the new § 707(b), the courts have recognized that it is "best understood as a codification of pre-BAPCPA case law and, as such, pre-BAPCPA case law is still applicable when determining whether to dismiss a case for abuse." (Citations omitted.) Ng v. Farmer (In re Ng), 477 B.R. 118, 126 (B.A.P. 9th Cir. 2012).

The threshold for dismissal of a Chapter 7 case based on abuse has been lowered. Before it was amended by BAPCPA, Section 707(b) allowed dismissal for "substantial abuse" of Chapter 7. See In re Mitchell, 357 B.R. 142, 153 (Bankr. C.D. Cal. 2006) ("Given that BAPCPA has lowered the threshold for dismissal under § 707(b) from "substantial abuse " to "abuse", it appears that the Price test (which was formulated for the more rigorous "substantial abuse"

6

standard) is still relevant in making determinations of "abuse" under the current version of § 707(b)(3).")

## III.

## IN APPLYING THE "TOTALITY OF THE CIRCUMSTANCES" STANDARD, THE COURT SHOULD CONSIDER, AMONG OTHER FACTORS, WHETHER THE DEBTOR'S BUDGET IS REASONABLE, WHETHER EXPENSES CAN REASONABLY BE REDUCED, WHETHER THE PETITION WAS FILED IN GOOD FAITH, AND, MOST IMPORTANTLY, WHETHER THE DEBTOR HAS THE ABILITY TO REPAY THEIR DEBTS

The dismissal of Chapter 7 cases for abuse based on the "totality of the circumstances" test predated the enactment of BAPCPA. As such, courts have continued to rely on pre-BAPCPA case law in determining whether there exists "abuse" under § 707(b)(3)(B). See In re Maya, 374 B.R. 750, 754 (Bkrtcy. S.D. Cal. 2007) (applying pre-BAPCPA case law to conclude ability to pay can support case dismissal under post-BAPCPA § 707(b)(3)); In re Pak, 343 B.R. 239, 243 (Bkrtcy. N.D. Cal. 2006) (noting it would be "counterintuitive" to construe the phrase "totality of circumstances" used pre-BAPCPA differently post-BAPCPA); In re Camp, 416 B.R. 304, 312 (Bankr. E.D. Tex. 2009) (applying pre-BAPCPA factors in considering "totality of circumstances").

Orders of dismissal under § 707(b) and whether to hold an evidentiary hearing are reviewed under the abuse of discretion standard. See In re Khachikyan, 335 B.R. 121, 125 (9th Cir. B.A.P. 2005). While the determination of whether the facts of a given case amount to "abuse" must be made on a case-by-case basis, and the issue is committed to the Court's sound discretion, the reported cases offer guidance in identifying the various factors to be considered in reaching that determination. See In re Camp at 312 (collecting and reviewing the cases); see also In re Green (4th Cir. 1991) 934 F.2d 568, 572.

Among the various factors that may be considered in weighing whether to grant a Motion to Dismiss brought under 11 U.S.C. § 707(b)(3) under the "totality of the circumstances" test include whether:

7

a) Whether the debtor has a likelihood of sufficient future income to fund a Chapter 11, 12, or 13 plan which would pay a substantial portion of the unsecured claims;

b) Whether the debtor's petition was filed as a consequence of illness, disability, unemployment, or some other calamity;

c) Whether the schedules suggest the debtor obtained cash advancements and consumer goods on credit exceeding his or her ability to repay them;

d) Whether the debtor's proposed family budget is excessive or extravagant;

e) Whether the debtor's statement of income and expenses is misrepresentative of the debtor's financial condition; and

f) Whether the debtor has engaged in eve-of-bankruptcy purchases.

In re Price, 353 F.3d 1135 (9th Cir. 2004) (citing 3 Norton Bankruptcy Law and Practice 2d § 67:5, at 67-10 (William L. Norton, Jr. et al. eds., 1997)).

The debtor's ability to pay creditors out of future disposable income is the principal consideration of the "totality of the circumstances" test. See In re Kelly at 914-915. Courts are not "chained" to the Means Test analysis of disposable income during the limited 6-month prior to filing, but under the §707(b)(3)(B) "totality of the circumstances" test are free to examine the debtor's actual income as opposed to the income stated on Form B22A. In re Camp at 313-314; In re Pennington, 348 B.R. 647 (Bankr. D. Del. 2006) (the court may consider debtor's financial condition as of date dismissal motion is heard); In re Pak, at 246-247) (a debtor's actual and anticipated future income must be considered under § 707(b)(3)(B) dismissal motion. A debtor who has the ability to repay a meaningful portion of their debts is expected to do so, either by reorganizing their debts through bankruptcy or by seeking non-bankruptcy alternatives.

Here, Debtor has failed to include all household income. She did this because, as was the case with her last two prior bankruptcies, the inclusion of all household income would raise the presumption of abuse and, given that Debtor lists disposable income of $3,119.55, she would not be able to rebut this presumption. She has the ability to repay a substantial portion of her unsecured debts. Given the proximity of the entry of judgment and Debtor filing her bankruptcy,

8

Case 8:26-bk-11720-SC    Doc 24    Filed 07/22/26    Entered 07/22/26 21:58:33    Desc
Main Document    Page 41 of 52

it does not seem that the filing was a consequence of illness, disability, unemployment, or some other calamity.

## CONCLUSION

Chapter 7 bankruptcy is designed to provide a fresh start to those who are truly unable to pay their debts due to insurmountable financial hardship. Allowing the Debtor to discharge her debts under Chapter 7 would undermine the integrity of the bankruptcy system and set a precedent that high-income earners can evade their financial responsibilities while maintaining an extravagant lifestyle – and if doesn't work the first time, keep trying. The Debtor's repeated filings and misrepresentations of her financial status further demonstrate an abuse of the bankruptcy process.

In light of the fact that the Debtor filed this case with a substantial amount of disposable income, she should not be entitled to a Chapter 7 discharge. Debtor neglected to include the full amount of her rent with the specific purpose of excluding the contribution income which is used to pay the amount of rent that is not listed. This financial capability clearly indicates that she does not qualify for the relief intended for those who are genuinely unable to meet their financial obligations.

Therefore, to preserve the integrity of the bankruptcy system and ensure that it is used appropriately, the Debtor's petition for Chapter 7 relief should be dismissed or converted to a Chapter 13 proceeding. In Chapter 13, the Debtor can develop a repayment plan that reflects her true financial capacity and allows her to meet her obligations to her creditors. This would ensure that the bankruptcy system remains a refuge for those in genuine need and not a tool for the affluent to avoid their legitimate financial responsibilities.

For the reasons stated above, the Court should either dismiss Debtor's case or allow her to convert her case to one under Chapter 13.

HESTON & HESTON,
Attorneys at Law

Date: June 12, 2024

RICHARD HESTON,
Attorney for Creditor

EXHIBIT C

 **Gmail**

**Anerio Altman <avaesq@lakeforestbkoffice.com>**

---

# On In Re: Susan J. White 26-11720
1 message

---

**Anerio V. Altman, Esq. #228445** <avaesq@lakeforestbkoffice.com>       Fri, Jul 17, 2026 at 12:48 PM
To: Ben Heston <ben@nexusbk.com>

Ben:

Please note that we will make the Debtor available for a 2004 exam. My office offers to pay the reporter costs if your client desires. Although your client would not have had the opportunity to question my client because both the UST officer and I had a hearing at 1:30 that day, the 341a could have been continued. However, I don't believe the UST Officer at the time would have been interested in doing so. Chapter 11 341a hearings differ from Chapter 7 hearings, and unless the UST is specifically interested they tend to tell parties to conduct 2004 exams if they are no longer actively questioning the Debtor. Nevertheless, since your client would not have had to pay for a 2004 reporter if the 341a hearing had proceeded, my office will pay for it.

Please let me know if your client is interested.

Please find the link to the recording of the 341a hearing attached. If this doesn't work, it may be because this is the UST's recording and you may need to ask them for the information. They can send these very quickly if you have a Box account.

https://jefs.box.com/s/bt2gscxtj7agduiu19lsh9j43c8visc6

--
"Live Debt Free Again"
Anerio V. Altman, Esq.
California State Bar License #228445
Washington State Bar License #62501
26632 Towne Centre Drive #300
Foothill Ranch, CA 92610
Phone and Fax: (949) 218-2002
www.lakeforestbankruptcy.com

If you'd like to book an appointment with us, please use this link: https://calendar.app.google/YneTjW9ZPU7DtCWf9

We are a debt relief agency. We help people file bankruptcy under the bankruptcy code.

This communication is for the intended recipient only. This communication may contain information that is privileged, confidential and exempt from disclosure under applicable law and constitutes an electronic communication within the meaning of the Electronic Communications Privacy Act, 18 U.S.C. 2510. If you are not the intended recipient, you are hereby notified that any unauthorized use, dissemination, distribution or copying of this communication is strictly prohibited and may subject you to criminal or civil penalty. If you have received this communication in error, please notify us immediately by email, delete the message, and destroy any copies.

**EXHIBIT D**

 Gmail

**Anerio Altman <avaesq@lakeforestbkoffice.com>**

## Susan Jo White 26-11720

**Anerio V. Altman, Esq. #228445 <avaesq@lakeforestbkoffice.com>**  Wed, Jul 15, 2026 at 12:52 PM
To: Ben Heston <ben@nexusbk.com>
Cc: Richard Heston <Rheston@hestonlaw.com>

We're also available for a 2004 exam.  I'm not sure Ken wants to sit through a long 341a hearing.
[Quoted text hidden]

**EXHIBITE**

United States Bankruptcy Court

Central District of California

In re:                                                                    Case No. 26-11720-SC

Susan Jo White                                                            Chapter 11

     Debtor

# CERTIFICATE OF NOTICE

District/off: 0973-8                        User: admin                          Page 1 of 2

Date Rcvd: Jun 03, 2026                     Form ID: 309E1                        Total Noticed: 19

The following symbols are used throughout this certificate:

**Symbol**    **Definition**

+     Addresses marked '+' were corrected by inserting the ZIP, adding the last four digits to complete the zip +4, or replacing an incorrect ZIP. USPS regulations require that automation-compatible mail display the correct ZIP.

^     Addresses marked '^' were sent via mandatory electronic bankruptcy noticing pursuant to Fed. R. Bank. P. 9036.

**Notice by first class mail was sent to the following persons/entities by the Bankruptcy Noticing Center on Jun 05, 2026:**

| Recip ID | | Recipient Name and Address |
|---|---|---|
| db | + | Susan Jo White, 10 Snowberry Lake, Lake Forest, CA 92630-8383 |
| 43133558 | + | Charles Schwab, PO Box 5050, Richfield, OH 44286-5050 |
| 43133560 | | Equifax, Po Box 105281, Atlanta, GA 30348-5281 |
| 43133561 | | Experian, P.O. Box 9530, Allen, TX 75013 |
| 43133564 | + | Frieda Baldwin, 13432 2nd Street, Hope, ND 58046-9049 |
| 43133565 | + | Gilligan Frisco & Trutanich, LLP, One World Trade Center Suite 1740, Long Beach, CA 90831-0002 |
| 43133568 | + | Jianfeng Le, 26 Boulder View, Irvine, CA 92603-0410 |
| 43133569 | + | Law Office of Hollie A. Lemkin, Law Office of John Teal, 23 Corporate Plaza Dr #150, Newport Beach, CA 92660-7908 |
| 43133571 | + | The UPS Store, 25422 Trabuco Road 105, Lake Forest, CA 92630-2798 |

TOTAL: 9

**Notice by electronic transmission was sent to the following persons/entities by the Bankruptcy Noticing Center.**
Electronic transmission includes sending notices via email (Email/text and Email/PDF), and electronic data interchange (EDI). Electronic transmission is in Eastern Standard Time.

| Recip ID | | Notice Type: Email Address | Date/Time | Recipient Name and Address |
|---|---|---|---|---|
| aty | | Email/Text: aaltman@ecf.courtdrive.com | Jun 04 2026 01:25:00 | Anerio V Altman, Lake Forest Bankruptcy II, APC, 26632 Towne Centre Dr #300, Foothill Ranch, CA 92610 |
| smg | | EDI: EDD.COM | Jun 04 2026 05:16:00 | Employment Development Dept., Bankruptcy Group MIC 92E, P.O. Box 826880, Sacramento, CA 94280-0001 |
| smg | | EDI: CALTAX.COM | Jun 04 2026 05:16:00 | Franchise Tax Board, Bankruptcy Section MS: A-340, P.O. Box 2952, Sacramento, CA 95812-2952 |
| smg | | EDI: IRS.COM | Jun 04 2026 05:16:00 | Internal Revenue Service, PO Box 7346, Philadelphia, PA 19101-7346 |
| smg | + | Email/Text: LAROBankruptcy@SEC.gov | Jun 04 2026 01:26:00 | Securities & Exchange Commission, 444 South Flower St., Suite 900, Los Angeles, CA 90071-2934 |
| 43133559 | + | EDI: CITICORP | Jun 04 2026 05:16:00 | Citibank, Citicorp Cr Srvs/Centralized Bankruptcy, PO Box 790040, S Louis, MO 63179-0040 |
| 43133563 | | EDI: CALTAX.COM | Jun 04 2026 05:16:00 | Franchise Tax Board, PERSONAL BANKRUPTCY MS A340, PO BOX 2952, Sacramento, CA 95812-2952 |
| 43133562 | + | EDI: CALTAX.COM | Jun 04 2026 05:16:00 | Franchise Tax Board, Personal Bankruptcy MS A340, PO Box 942867, Sacramento, CA 94267-0001 |
| 43133570 | | EDI: TDBANKNORTH.COM | Jun 04 2026 05:16:00 | Nordstrom Signature Visa, Colorado Service Center, PO Box 6555, Englewood, CO 80155-6555 |
| 43133572 | ^ | MEBN | Jun 04 2026 01:18:31 | Transunion, Transunion Customer Solutions, Po Box 2000, Chester, PA 19016-2000 |

| User: admin | Page 2 of 2 |
| --- | --- |
| Form ID: 309E1 | Total Noticed: 19 |

# BYPASSED RECIPIENTS

**The following addresses were not sent this bankruptcy notice due to an undeliverable address, *duplicate of an address listed above, *P duplicate of a preferred address, or ## out of date forwarding orders with USPS.**

| Recip ID | Bypass Reason | Name and Address |
| --- | --- | --- |
| 43133566 | * | Internal Revenue Service, Centralized Insolvency Operation, PO Box 7346, Philadelphia, PA 19101-7346 |
| 43133567 | * | Internal Revenue Service, Centralized Insolvency Operation, Po Box 7346, Philadelphia, PA 19101-7346 |

TOTAL: 0 Undeliverable, 2 Duplicate, 0 Out of date forwarding address

# NOTICE CERTIFICATION

**I, Gustava Winters, declare under the penalty of perjury that I have sent the attached document to the above listed entities in the manner shown, and prepared the Certificate of Notice and that it is true and correct to the best of my information and belief.**

**Meeting of Creditor Notices only (Official Form 309): Pursuant to Fed .R. Bank. P.2002(a)(1), a notice containing the complete Social Security Number (SSN) of the debtor(s) was furnished to all parties listed. This official court copy contains the redacted SSN as required by the bankruptcy rules and the Judiciary's privacy policies.**

Date: Jun 05, 2026                      Signature:              /s/Gustava Winters

# CM/ECF NOTICE OF ELECTRONIC FILING

**The following persons/entities were sent notice through the court's CM/ECF electronic mail (Email) system on June 3, 2026 at the address(es) listed below:**

| Name | Email Address |
| --- | --- |
| Anerio V Altman | on behalf of Debtor Susan Jo White aaltman@ecf.courtdrive.com  lakeforestbankruptcy@jubileebk.net |
| Kenneth Misken | on behalf of U.S. Trustee United States Trustee (SA) Kenneth.M.Misken@usdoj.gov |
| United States Trustee (SA) | ustpregion16.sa.ecf@usdoj.gov |

TOTAL: 3

**Information to identify the case:**

| | | | |
|---|---|---|---|
| Debtor 1: | **Susan Jo White**<br>First Name   Middle Name   Last Name | Social Security number or ITIN: | xxx–xx–2902 |
| | | EIN: __–_____ | |
| Debtor 2:<br>(Spouse, if filing) | First Name   Middle Name   Last Name | Social Security number or ITIN: ____ | |
| | | EIN: __–_____ | |
| United States Bankruptcy Court: Central District of California | | Date case filed for chapter: 11   5/31/26 | |
| Case number: 8:26–bk–11720–SC | | | |

Official Form 309E1 (For Individuals or Joint Debtors)

# Notice of Chapter 11 Bankruptcy Case

12/22

**For the debtors listed above, a case has been filed under chapter 11 of the Bankruptcy Code. An order for relief has been entered.**

**This notice has important information about the case for creditors and debtors, including information about the meeting of creditors and deadlines. Read all pages carefully.**

The filing of the case imposed an automatic stay against most collection activities. This means that creditors generally may not take action to collect debts from the debtors or the debtors' property. For example, while the stay is in effect, creditors cannot sue, garnish wages, assert a deficiency, repossess property, or otherwise try to collect from the debtors. Creditors cannot demand repayment from debtors by mail, phone, or otherwise. Creditors who violate the stay can be required to pay actual and punitive damages and attorney's fees. Under certain circumstances, the stay may be limited to 30 days or not exist at all, although debtors can ask the court to extend or impose a stay.

Confirmation of a chapter 11 plan may result in a discharge of debt. Creditors who assert that the debtors are not entitled to a discharge of any debts or who want to have a particular debt excepted from discharge may be required to file a complaint in the bankruptcy clerk's office within the deadlines specified in this notice. (See line 10 below for more information.)

To protect your rights, consult an attorney. All documents filed in the case may be inspected at the bankruptcy clerk's office at the address listed below or through PACER (Public Access to Court Electronic Records at https://pacer.uscourts.gov).

**The staff of the bankruptcy clerk's office cannot give legal advice.**

**To help creditors correctly identify debtors, debtors submit full Social Security or Individual Taxpayer Identification Numbers, which may appear on a version of this notice. However, the full numbers must not appear on any document filed with the court.**

**Do not file this notice with any proof of claim or other filing in the case. Do not include more than the last four digits of a Social Security or Individual Taxpayer Identification Number in any document, including attachments, that you file with the court.**

| | | About Debtor 1: | About Debtor 2: |
|---|---|---|---|
| 1. | **Debtor's full name** | Susan Jo White | |
| 2. | **All other names used in the last 8 years** | aka Susan White, aka Susan J. White | |
| 3. | **Address** | 10 Snowberry Lake<br>Lake Forest, CA 92630 | |
| 4. | **Debtor's attorney**<br>Name and address | Anerio V Altman<br>Lake Forest Bankruptcy II, APC<br>26632 Towne Centre Dr #300<br>Foothill Ranch, CA 92610 | Contact phone 949–218–2002<br><br>Email: aaltman@ecf.courtdrive.com |
| 5. | **Bankruptcy clerk's office**<br>Documents in this case may be filed at this address.<br>You may inspect all records filed in this case at this office or online at https://pacer.uscourts.gov. | 411 West Fourth Street, Suite 2030,<br>Santa Ana, CA 92701–4593 | Hours open:<br>9:00AM to 4:00 PM<br><br>Contact phone 855–460–9641<br><br>Dated: 6/3/26 |

8/JL

**For more information, see pages 2 and 3>**

Debtor **Susan Jo White**                                                    Case number **8:26–bk–11720–SC**

| 6. | Meeting of creditors | **July 7, 2026 at 01:15 PM** | Location: |
|---|---|---|---|
| | Debtors must attend the meeting to be questioned under oath by the trustee and by creditors. In a joint case, both spouses must attend. | The meeting may be continued or adjourned to a later date. If so, the date will be on the court docket. | **TELEPHONIC MEETING, CONFERENCE LINE:1–888–330–1716, PARTICIPANT CODE:8695724** |
| | Creditors may attend, but are not required to do so. | The court, after notice and a hearing, may order that the United States trustee not convene the meeting if the debtor has filed a plan for which the debtor solicited acceptances before filing the case. | |

| 7. | Deadlines | **Deadline to file a complaint objecting to discharge or to challenge whether certain debts are dischargeable (see line 10 for more information):** | |
|---|---|---|---|
| | The bankruptcy clerk's office must receive these documents and any required filing fee by the following deadlines. | • if you assert that the debtor is not entitled to receive a discharge of any debts under 11 U.S.C. § 1141(d)(3), the deadline is the first date set for hearing on confirmation of the plan. The court or its designee will send you notice of that date later.<br>• if you want to have a debt excepted from discharge under 11 U.S.C. § 523(a)(2), (4), or (6), **the deadline is:9/8/26.** | |
| | | **Deadline for filing proof of claim:** | Notice of deadline will be sent at a later time. |
| | | A proof of claim is a signed statement describing a creditor's claim. A proof of claim form may be obtained at www.uscourts.gov or any bankruptcy clerk's office. | |
| | | Your claim will be allowed in the amount scheduled unless: | |
| | | • your claim is designated as *disputed*, *contingent*, or *unliquidated*;<br>• you file a proof of claim in a different amount; or<br>• you receive another notice. | |
| | | If your claim is not scheduled or if your claim is designated as *disputed*, *contingent*, or *unliquidated*, you must file a proof of claim or you might not be paid on your claim and you might be unable to vote on a plan. You may file a proof of claim even if your claim is scheduled. | |
| | | You may review the schedules at the bankruptcy clerk's office or online at https://pacer.uscourts.gov. | |
| | | Secured creditors retain rights in their collateral regardless of whether they file a proof of claim. Filing a proof of claim submits a creditor to the jurisdiction of the bankruptcy court, with consequences a lawyer can explain. For example, a secured creditor who files a proof of claim may surrender important nonmonetary rights, including the right to a jury trial. | |
| | | **Deadline to object to exemptions:** | **Filing Deadline:** |
| | | The law permits debtors to keep certain property as exempt. If you believe that the law does not authorize an exemption claimed, you may file an objection. | 30 days after the *conclusion* of the meeting of creditors |

| 8. | Creditors with a foreign address | If you are a creditor receiving mailed notice at a foreign address, you may file a motion asking the court to extend the deadlines in this notice. Consult an attorney familiar with United States bankruptcy law if you have any questions about your rights in this case. |
|---|---|---|

| 9. | Filing a Chapter 11 bankruptcy case | Chapter 11 allows debtors to reorganize or liquidate according to a plan. A plan is not effective unless the court confirms it. You may receive a copy of the plan and a disclosure statement telling you about the plan, and you may have the opportunity to vote on the plan. You will receive notice of the date of the confirmation hearing, and you may object to confirmation of the plan and attend the confirmation hearing. Unless a trustee is serving, the debtor will remain in possession of the property and may continue to operate the debtor's business. |
|---|---|---|

| 10. | Discharge of debts | Confirmation of a chapter 11 plan may result in a discharge of debts, which may include all or part of a debt. See 11 U.S.C. § 1141(d). However, unless the court orders otherwise, the debts will not be discharged until all payments under the plan are made. A discharge means that creditors may never try to collect the debt from the debtors personally except as provided in the plan. If you believe that a particular debt owed to you should be excepted from the discharge under 11 U.S.C. § 523 (a)(2), (4), or (6), you must file a complaint and pay the filing fee in the bankruptcy clerk's office by the deadline. If you believe that the debtors are not entitled to a discharge of any of their debts under 11 U.S.C. § 1141 (d)(3), you must file a complaint and pay the filing fee in the clerk's office by the first date set for the hearing on confirmation of the plan. You will be sent another another notice informing you of that date. |
|---|---|---|

**For more information, see pages 1 and 3>**

Debtor  **Susan Jo White**                                                                Case number **8:26–bk–11720–SC**

| 11. | **Exempt property** | The law allows debtors to keep certain property as exempt. Fully exempt property will not be sold and distributed to creditors, even if the case is converted to chapter 7. Debtors must file a list of property claimed as exempt. You may inspect that list at the bankruptcy clerk's office or online at https://pacer.uscourts.gov. If you believe that the law does not authorize an exemption that the debtors claim, you may file an objection. The bankruptcy clerk's office must receive the objection by the deadline to object to exemptions in line 7. |
|-----|---------------------|---|
| 12. | **Bankruptcy Fraud and Abuse** | Any questions or information relating to bankruptcy fraud or abuse should be addressed to the Fraud Complaint Coordinator, Office of the United States Trustee, 411 West Fourth Street, Suite 7160, Santa Ana, CA 92701. |

**For more information, see pages 1 and 2>**

Official Form 309E1 (For Individuals or Joint Debtors)          **Notice of Chapter 11 Bankruptcy Case**                    page 3

## PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is:

26632 Towne Centre Drive #300, Foothill Ranch, CA 92610

A true and correct copy of the foregoing document entitled (*specify*):

Opposition

will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

### 1. TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF): Pursuant to controlling General Orders
and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) __07/22/2026__, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

Anerio V Altman aaltman@ecf.courtdrive.com, lakeforestbankruptcy@jubileebk.net
Benjamin Heston bhestonecf@gmail.com, benheston@recap.email,NexusBankruptcy@jubileebk.net
Kenneth Misken Kenneth.M.Misken@usdoj.gov
United States Trustee (SA) ustpregion16.sa.ecf@usdoj.gov

☐ Service information continued on attached page

### 2. SERVED BY UNITED STATES MAIL:
On (*date*) _____, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

☐ Service information continued on attached page

### 3. SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL (state method
for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) __07/21/2026__, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

Delivery to the court per the court manual.

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| | | |
|---|---|---|
| __07/22/2026__ | __Anerio Ventura Altman, Esq.__ | __/s/ Anerio Ventura Altman, Esq.__ |
| *Date* | *Printed Name* | *Signature* |

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*

**F 9013-3.1.PROOF.SERVICE**